Good morning, your honors. If it pleases the court, I'm here on behalf of Mr. Richter today. I'm 30 years a lawyer, 22 of those as a federal defender. And I feel somewhat embarrassed being at the podium today under these circumstances because I was the one responsible for the closing argument not being given. Now, having said that, let me rephrase that. I wasn't responsible for the closing argument not being given. I was responsible for not correcting the problem on the spot or before the case closed down. Was it a problem, Mr. Donahoe? You didn't make an opening statement. There was no jury there, there was just a judge. Maybe you didn't have anything to say in argument. Well, I guess if we're going to go back to the beginning of the case and talk about the opening statement, I didn't see the need for one. And the court had been apprised, I think, through the pretrial process, and I think some of the colloquy in the beginning of the case indicates that the judge was keyed into some specific issues. So given that you had seen the need for one, would you have asked for one? If I had seen the need for one, I would have given one. Well, or would you have stated you wanted to give one? Yes. All right. And so let's go to the closing. Why didn't you do the same if you felt the need for one? Because, and I guess that's the nub of this as I see it, and I've reflected on it considerably. There was no opportunity for one. Well, let's talk about that because how really could you say that there was no opportunity when there was, you finished giving the evidence, the judge finished taking all the evidence. He announced that he was going to take a break, I guess, and before that he asked if anybody wanted to enforce the rule. I understand you might not have known exactly what was going to happen when he came back, but you knew it was nearing the end of the case. He came back out onto the bench and then he proceeded. Why couldn't you just stand up? I mean, you do that for a living, standing up, making statements of what you would like to happen. I'm just perplexed why you couldn't do that here. Well, I guess if we want to parse that, and we should, let's talk about that. When the court came back and reopened the session, there was no opportunity for me to speak. I have been practicing. I don't know what the experience of others may be, but when the court resumes the bench, I do not speak until I'm spoken to. Please hear me out, Your Honor. Look what you just did right now. Couldn't you have done that with Judge Molloy below? No, I don't think so. Why not? I mean, you just did it to me. Am I less intimidating than Judge Molloy? No, because, and I wasn't, I'm not going to say that I was intimidated. Please don't misunderstand. I'm just trying to think of a reason. Right now you were very, you were able to stop me from talking and to make a point. I don't see how you wouldn't have been able to do that. But I think there's a difference between opportunity to make an argument and correcting malfeasance in not being allowed to give one. There's a distinction to be drawn between those two things. It's just stating, standing up and stating, Your Honor, I'd like to give a closing statement. But he had already announced that the individual was guilty. How does that stop you in any other objection that's made? At the first opportunity, the first chance you think, even if something else is happening and somebody has said something, then you move for it to be stricken or you say, let's reverse, let's back up. I understand that. But I'm trying to be plain here, and I indicated this in the briefs. I was the one responsible at the end of the day. But there's a distinction to be drawn between having an opportunity to make an argument and correcting the situation in order to give one. Under our case law, though, I think the question is having an opportunity or being prevented from giving a closing statement. And I'm just trying to figure out here, were you prevented from giving a closing statement? That is my position, that I was prevented. And then explain to me how you were prevented, especially in light of our discussion that we've had up to this point. Because the guilty verdict was announced. It was announced immediately upon the Court resuming the bench. There was no opportunity. I was prevented. What was wrong with just saying, Your Honor, I move to set aside the guilty judgment for the purpose of giving a final argument and considering my argument before you reinstate any sort of a judgment? I don't think that there's anything wrong with that, Your Honor. But we're just talking about now a matter of degree and how the situation might be corrected. I mean, if we're going to look at the problem through the lens of the amount of time that went by for the claim to be raised, I guess that's one way of looking at it. But I was honest in the briefing and told this Court that it did not raise in my consciousness until Frost was decided by this Court in April. But what did you think the judge was doing at the end of the evidence? So the evidence took an hour and a half. Correct. Just before the end of the evidence, you made your Rule 29 motion. The judge tells you that he's going off the bench and asks you whether you want specific findings of fact. What did you think he was going to do other than make his determination on the trial? To be honest, Your Honor, I don't know that I was reflecting on that in any detail. It's such a common experience, I think, for a lawyer, for the court at the end of a session about that length, especially in the morning, to say we're going to take a break. I have deep experience in that court before Judge Malloy. I'm familiar with those practices. When he announced that, that was just a routine thing to me. But you object all the time. Couldn't you stand up and say, Your Honor, I object? I didn't have an opportunity to give a closing and make your record. I could. And if you want to look at it, I guess, that way, I was ineffective for not doing that. And the client should not be the individual that has to suffer the consequences of that. I mean, there's a connection between giving a closing argument and the Sixth Amendment right. Herring clearly says that in plain terms. So does this Court in Frost. So, you know, irrespective of the fact that I was the one that didn't make the objection, we're still in the same situation. So the question is, could it have been persuasive, I think? Well, isn't this more like Bell? You quoted Herring. Isn't this more like Bell? No. Why not? It's a perfect match for Herring. Well, Herring is a denial of summation. Bell, it seems like, says, while a denial of defendant's legitimate request to make a closing argument violates the defendant's constitutional right to counsel, the Sixth Amendment does not require that a defendant be affirmatively and individually advised that he or she has a right to present a closing argument. How is this not like Bell? Well, because you're looking at it, I guess, from my perspective that the Court had no need to come out and tell me that I needed the advice that I was entitled to make the closing argument. I think there's a difference there. There's a distinction to be drawn there. Judge Malloy apparently had made the decision in his own mind that he did not need the oral argument and immediately announced the decision when he resumed the bench. The case was over at that point in time in terms of guilt or innocence. Whether that objection surfaced in my consciousness in that moment or when I wrote the brief or here this morning I think is kind of irrelevant. The fact is that there was no opportunity for closing argument. Nobody disagreed, and I think if Judge Malloy were here, he would say that, well, of course you were entitled to that. That wouldn't be a controversy. I'd like to reserve at least the last little bit. Thank you. Good morning. May it please the Court. Paulette Stewart for the United States. What we have here is a very simple bench trial where knowing possession of the firearm is the issue. The interstate nexus wasn't an issue. Mr. Richter's felony status was not an issue. The only question was did Mr. Richter knowingly possess the firearm, and then within that it was a credibility determination between the defendant's father and the defendant's fiancee. Who were you going to believe? Did Mr. Richter walk out of his father's house with the firearm in his hand, or did the fiancee leave with the firearm? Wasn't there also a confession to a deputy? There was. There was a statement by Mr. Richter that he possessed the firearm, and the reason why he possessed the firearm was his father no longer wanted to hold it for him. Yes. But what we have is from the Fifth and the Tenth Circuits a rule to follow, and I submit that it's a reasonable rule to follow in this case, which is where a defendant has a reasonable opportunity to object or request closing argument and does not, then the defendant has waived that right. And the reason behind the rule is so that the defendant cannot inject error into the record and then complain as what is happening here when there's an opportunity to correct that error down below and stop that, say, stop, Your Honor. I understand. The evidence closed. We've had this discussion about Rule 23 findings, whether or not we need those. Both parties have answered no. Does that address the surprise argument that is being made here today? I don't think there's any surprise. I mean, from reading the record, there's no surprise. Judge Malloy is not a fast-talking man. He didn't sit down and say, sit down, here's my findings, this, that, the other thing. There was plenty of opportunity to interrupt the district court, as your point was made with counsel. That's what we do for a living. Before trial did, I don't know if you were the trial attorney. Yes, Your Honor. Did you and defense counsel ever discuss whether you would give opening statements at the bench trial or closing statements, or was the matter ever discussed with the trial judge? You know, it really was not because we had the pretrial filings that we did. Defendant had filed his motion in limine. I had filed a trial brief. The court had asked parties for findings of fact. I had filed those. So between all the paperwork, I guess, that had been done prior to the bench trial, it was pretty well teed up that here's what the issue was. The defendant had stipulated to his felony status. There was no cross-examination. And Judge Malloy was very focused on the credibility issue of Ms. Kirsten. Yes. At the outset of the trial. Yes, yes. So I don't know what more. I mean, it seems like a reasonable decision to not proceed with closing statements when you've made your Rule 29 motion and the judge is focused on what is the critical issue. Yes, Your Honor. And I guess part of it, too, is that the judge didn't come out and say, I don't need this. I don't need closing argument. You, you know, sit down, shut up, I'm ready to give my verdict. That was not done in this case either. It was just, let's be seated, we're going to continue. And I think, too, that there could be strategic reasons for not giving, you know, obviously looking at all this hindsight, for not giving closing argument. I mean, the defendant's case didn't go that well. It was one witness. And so you're going to highlight that your witness didn't do that well, that you're, you know, nobody believed her in the past, and she's got inconsistencies in her statement. She's got that, yes, we had ammunition with the gun. So I think providing summation is helpful to a point, but in this instance, with this narrow of an issue and this simple of a case, so it's ‑‑ I think Mr. Donahoe is arguing that it's structural error, that it's more like herring. But he was not foreclosed. He was not foreclosed from providing closing argument. He was not stopped. He was not chained to his chair. At any time when the district court comes in and says, I have considered all the evidence in the case, stand up. Hey, hey, stop. Your Honor, I would like to briefly sum my case. The district court would have stopped. Like I said, Ms. ‑‑ you know, the court is, and we've done lots of these bench trials in front of this district court. We all can stand up and object, say, hold, you know, let's back up. Or even after he finishes, the district court finishes, saying, I find the defendant guilty of the crime charged, being felon in possession of a firearm. Counsel could have stood up and said, Your Honor, I understand what you just said. I just realized I didn't get to sum my case. Can we please back up, sum my case? I would like to make my record, and then continue. But as the judge said, this was a very simple case. It took us an hour and a half to present the whole thing. Defense counsel had just done a Rule 29 motion, called one witness, and then we're literally at the close of the case, and have our Rule 23 discussion. So I ‑‑ there is no plain error. There is no structural error. The defendant waived his closing argument in this case. And I ask you to affirm his conviction. If there are no questions, I will sit down. Thank you. Mr. Donohue, do you want to use your minute of rebuttal? Thank you. I just want to emphasize that I do think there's a distinction to be drawn between the court, assuming the bench in making the decision, without an opportunity for the closing argument. Had I objected on the spot, I suppose the court could have retrenched and said, Oh, you're right. Why don't you let me hear from you? But if you read Frost, as articulated by the Supreme Court recently, that overturned this court's decision, there's some language in there that indicates from Haring, I think, that says the closing argument is the last opportunity to change one's mind. All of this presupposes that I knew as an individual, a lawyer, representing the defendant in the case, that Judge Malloy was taking the break to retire to Chambers to deliberate. I did not know that. I did not know that in his mind the case was over. And I think it's a fair point. Thank you, Your Honors. Thank you. Thank you very much. Thank you for your presentation. And the case of United States of America v. Richter is submitted.
judges: Bea, Murguia, Orrick